UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| SHIRLEY HALL,<br><br>            Plaintiff,<br><br>     v.<br><br>JO ANNE B. BARNHART,<br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>            Defendant. | No. CV 05-1206-PLA<br><br>**MEMORANDUM OPINION AND ORDER** |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on February 22, 2005, seeking review of the Commissioner's denial of her application for Supplemental Security Income benefits. The parties filed a Consent to proceed before the undersigned Magistrate Judge on April 20, 2005. Pursuant to the Court's Order, the parties filed a Joint Stipulation on November 7, 2005, that addresses their position concerning the disputed issue in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on August 25, 1949. [Administrative Record ("AR") at 113.] She has a high school education, and has attended one year of college. [AR at 79, 124.] Her previous work experience includes positions as an airline security representative, child monitor, and warehouse order filler. [AR at 119, 301-02, 313-14.]

On April 27, 1999, plaintiff protectively filed an application for supplemental security income benefits, alleging disability due to back and neck pain. [AR at 113-16, 118.] She claimed she has been unable to work since January 4, 1998. [AR at 113, 118.] After her application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 104.] The hearing was held on October 24, 2000, at which time plaintiff appeared with counsel and testified on her own behalf. [AR at 76-91.] On December 8, 2000, the ALJ found that plaintiff suffers from the severe impairment of discogenic and degenerative back disorder. [AR at 65-74.] The ALJ further found that plaintiff has the residual functional capacity[1] to perform medium work,[2] does not have any nonexertional mental limitations, and can perform her past relevant work. [AR at 73.] For this reason, the ALJ concluded that plaintiff is not under a disability, and is not eligible for benefits. [AR at 73-74.]

Plaintiff filed a request with the Appeals Council for review of the ALJ's decision. [AR at 11.][3] On April 26, 2002, the Appeals Council advised that the ALJ's decision would stand as the final decision of the Commissioner in plaintiff's case. [AR at 4-6.] Plaintiff subsequently filed suit in federal court. On August 7, 2003, this Court issued a Memorandum Opinion and Order reversing and remanding the case in order for the ALJ "to resolve the deviation between plaintiff's

---

[1] Residual functional capacity ("RFC") is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[2] Medium work is defined as work involving "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 416.967(c).

[3] While the matter was on appeal, plaintiff filed a subsequent application for Supplemental Security Income payments on April 16, 2002. [AR at 553-68.]

1  limitation [to simple tasks and instruction] and the amount of reasoning required by plaintiff's prior
2  employment as set forth in the [Dictionary of Occupational Titles] (DOT)." [AR at 393.] A new
3  hearing was held on February 5, 2004, and a supplemental hearing took place on August 18,
4  2004. [AR at 266-324.] At both proceedings, plaintiff testified on her own behalf, and the ALJ
5  elicited testimony from a vocational expert ("VE"). The ALJ issued a decision on November 23,
6  2004, denying plaintiff benefits. [AR at 248-54.] Specifically, the ALJ found that plaintiff can
7  perform medium, unskilled work with moderate limitations in her ability to do detailed or complex
8  work. [AR at 254.] Plaintiff subsequently filed another complaint in federal court.

### III.

### STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term substantial evidence means more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion. Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

/
/
/
/

# IV.

# THE EVALUATION OF DISABILITY

Persons are disabled for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

## A.     THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a severe impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.  If the claimant has a severe impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments (Listing) set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.  If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity to perform her past work; if so, the claimant is not disabled and the claim is denied.  Id.  The claimant has the burden of proving that she is unable to perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie case of disability is established.  The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy.  The determination of this issue comprises the fifth and final step in the

sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. [AR at 253.] At step two, the ALJ concluded that plaintiff's impairments -- discogenic and degenerative cervical and lumbar disc disorder, depression, panic disorder, and addiction to alcohol and valium -- are severe. [Id.] The ALJ found, however, that the impairments do not meet or equal any impairments in the Listing (step three). [Id.] At step four, the ALJ concluded that plaintiff is able to perform her past relevant work and is not disabled. Thus, the ALJ did not reach step five of the sequential analysis. [AR at 254.]

V.

**THE ALJ'S DECISION**

Plaintiff contends that the ALJ failed to comply with the remand order and resolve the deviation between her limitation to one- and two-step instructions and the amount of reasoning required by her past work. Joint Stipulation ("Joint Stip.") at 3. According to plaintiff, the results of her August 9, 2002, psychiatric examination show that she can only perform jobs that have a reasoning level of 1.[4] Id. at 4-5. Thus, plaintiff asserts, the ALJ erred in concluding that she has

---

[4]   Every job description in the Dictionary of Occupational Titles ("DOT") contains both a General Educational Development ("GED") component and a Specific Vocational Preparation ("SVP") component. See DOT Appendix C. A job's specific vocational preparation time is the amount of time it generally takes to learn the job. Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990). On the other hand, the GED "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." See DOT Appendix C. The GED component is comprised of three elements -- reasoning development, mathematical development, and language development -- which are rated on a six-point scale ranging from level 1 (generally the least difficult) to level 6 (the most difficult or complex). For a reasoning level 1 position, the worker must be able to "[a]pply commonsense understanding to carry out simple one- or two-step instructions [and] [d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." See id.

5

only moderate limitations in her ability to do detailed or complex work and that she is capable of performing each of her past relevant jobs. Id. at 6-7.

Neither party disputes the ALJ's findings regarding plaintiff's physical limitations. Rather, the contested issue here is whether the ALJ properly took into account plaintiff's reasoning capabilities when determining her RFC, and in determining that she can perform her past relevant work.

The evidence shows that plaintiff underwent two consultative psychiatric evaluations. The first took place on October 27, 1999, and was conducted by Dr. Chris Ho, who diagnosed plaintiff with panic attack/panic disorder, by history, and assigned her a Global Assessment of Functioning ("GAF") score of 65.[5] [AR at 208.] Dr. Ho found that she is able to follow simple instructions and work at simple tasks at a normal pace. [AR at 208-09.]

Dr. Nathan Lavid conducted a subsequent psychiatric evaluation of plaintiff on August 9, 2002. [AR at 624-27.] After testing plaintiff's mental capabilities, Dr. Lavid concluded that she can adequately remember and complete simple tasks, and is able to follow one- and two-part instructions.[6] [AR at 627.]

At the August 18, 2004, hearing, the VE testified regarding plaintiff's past jobs and their associated SVP and reasoning levels. According to the VE, plaintiff's job as an airline security

---

[5] A Global Assessment of Functioning score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, p. 32 (4th Ed. 2000). A GAF score from 61-70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." Id. at 34.

[6] The record also contains treating notes from Long Beach Mental Health. [AR at 506-18, 616-623.]

representative (DOT no. 372.667-010) has an SVP of 2[7] with a reasoning level of 2.[8] [AR at 313-14, 318.] The order filler position[9] (DOT no. 222.487-014) has an SVP of 3[10] and a reasoning level of 3,[11] while the child monitor position (DOT no. 301.677-010) has an SVP of 3 and a reasoning level of 3. [AR at 313, 318-19.] The VE testified that an SVP of 1 or 2 is the equivalent of "simple" work, and out of plaintiff's three past jobs, only the airline security representative position qualified as simple. [AR at 317-19.][12] The VE did not testify regarding whether plaintiff would be able to perform her past jobs if she were only able to follow one- and two-part instructions, or as to what reasoning level is compatible with such a limitation.

In the decision, the ALJ concluded that plaintiff has the following severe mental impairments: depression (not otherwise specified), panic disorder, and addiction to alcohol and valium.[13] [AR at 249.] The ALJ went on to assess plaintiff's mental abilities, and found that she

---

[7]  An SVP of 2 is defined as "[a]nything beyond short demonstration up to and including 1 month." See DOT, Appendix C.

[8]  Under reasoning level 2, a worker must "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and] [d]eal with problems involving a few concrete variables in or from standardized situations." See DOT, Appendix C.

[9]  At the February 2004 hearing, the VE characterized this position as a warehouse puller (DOT no. 922.687-058), which has a reasoning level of 2 and an SVP of 2. [AR at 289.] At the August 2004 hearing, the VE testified that this job is classified as an order filler. [AR at 313.] The ALJ ultimately concluded that plaintiff is capable of performing her past job as a warehouse puller -- which is unskilled as opposed to the semi-skilled order filler position. [AR at 249, 253.] In doing so, the ALJ did not explain why he chose the warehouse puller position as a more accurate description of plaintiff's past work.  Because the positions involve different skill levels, with different reasoning levels, the ALJ is directed, upon remand, to explain this choice.

[10]  An SVP of 3 is "[o]ver 1 month up to and including 3 months." See DOT, Appendix C.

[11]  Under reasoning level 3, a worker must "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form [and] [d]eal with problems involving several concrete variables in or from standardized situations." See DOT, Appendix C.

[12]  The VE explained that some, but not all, SVP 3 jobs may qualify as simple, as the classification depends on the complete job description and related reading, math, and language levels. [AR at 317.]

[13]  The ALJ also determined that plaintiff has the severe physical impairments of discogenic and degenerative cervical and lumbar disc disorder. [AR at 249.]

is moderately limited in her ability to do detailed or complex work, but is not impaired in her ability to do unskilled work. [AR at 252.] He further found that plaintiff is not precluded from performing any of her past relevant work as an airline security representative, child monitor and warehouse puller.[14] [AR at 249.]

In assessing the RFC, however, it appears that the ALJ failed to consider Dr. Lavid's opinion regarding plaintiff's limitation to performing one- and two-part instructions -- a critical finding that has a direct bearing on plaintiff's present level of reasoning and her ability to perform her past jobs. In particular, the Court notes that based on the relevant DOT definitions alone, a job that has a reasoning level of 2 -- such as plaintiff's past job as an airline security representative, which the VE characterized as simple work -- may not be compatible with a restriction to following only one- and two-part instructions. Rather, the limitation seems most compatible with reasoning level 1 positions, which require "commonsense understanding to carry out simple one- or two-step instructions," as opposed to the progressively more difficult requirement under reasoning level 2 "to carry out <u>detailed</u> but uninvolved written or oral instructions." See DOT, Appendix C (emphasis added).

Based on the record, it does not appear that Dr. Lavid's opinion is expressly contradicted by any other medical source. "The ALJ may reject an *uncontroverted* opinion of an [examining] physician only for clear and convincing reasons." <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995) (emphasis in original); <u>see</u> <u>also</u> <u>Pitzer v. Sullivan</u>, 908 F.2d 502, 506 (9th Cir. 1990). The ALJ's failure to expressly provide any convincing reasons based on substantial evidence for rejecting the assessment regarding the one- and two-part instruction limitation resulted in an implicit rejection of that portion of Dr. Lavid's opinion.[15] <u>See</u>, <u>e.g.</u>, <u>Smith v. Massanari</u>, 139

---

[14]   See footnote 9, <u>supra</u>.

[15]   Alternatively, because Dr. Ho's assessment did not include a limitation to one- and two-part instructions, it could be considered an opposing finding. In that event, the ALJ needed to set forth specific and legitimate reasons based on substantial evidence from the record to support the rejection of Dr. Lavid's opinion in favor of that of Dr. Ho. See <u>Nelsen v. Barnhart</u>, 2003 WL 297738, **2-3 (N.D.Cal. Feb. 4, 2003) (rejection of controverted physician's opinion must be based on specific and legitimate reasons that are supported by substantial evidence in the

F.Supp.2d 1128, 1133 (C.D.Cal. 2001) (reliance on one physician's opinion in making a finding, which differs from that of another physician, is an implicit rejection of the latter); Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981) ("Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason [citation omitted], an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.").

Due to this error, remand is in order. The Court directs the ALJ in the remand proceedings to properly consider and weigh Dr. Lavid's assessment with respect to plaintiff's reasoning capabilities. If the ALJ rejects Dr. Lavid's opinion, such rejection must be based on legally sufficient reasons. In the event the ALJ concludes that plaintiff is, in fact, capable of only following one- and two-part instructions, expert testimony should be obtained to determine what reasoning level is compatible with plaintiff's capabilities and, more specifically, whether a limitation to one- and two-part instructions would preclude plaintiff from her past employment.

The Court further observes that, in light of the findings of both examining psychiatrists that plaintiff is limited to simple tasks, the ALJ's determination that plaintiff is moderately limited in performing detailed or complex work is problematic to the extent it suggests she possesses a capability that extends beyond simple tasks. If the ALJ intended to reject the "simple task" limitation, he needed to support the rejection with clear and convincing reasons based on substantial evidence in the record.[16] See Andrews, 53 F.3d at 1041; see also Pitzer, 908 F.2d at

---

record)(citing Nguyen v. Chater, 100 F.3d 1462, 1466 (9th Cir. 1996)).

[16] In the decision, the ALJ noted Dr. Ho's opinion that plaintiff can perform simple tasks at a normal pace, and remarked "[t]he magistrate apparently accepted the argument that this limitation means that the claimant could not do unskilled work with an SVP of 2." [AR at 250.] The ALJ added "I doubt that was Dr. Ho's intention ... If Dr. Ho limited the claimant, it was probably due to her alcohol abuse." [Id.] This is not a clear and convincing reason for rejecting any part of Dr. Ho's opinion, as "[a]n ALJ ... may not substitute his own view of the effects of a mental impairment on a claimant for that of an examining [physician]." Nelsen, 2003 WL 297738 at *4. In any event, based on this passage, it appears the ALJ misconstrued the purpose of the remand proceeding. The determinative factor here is not the SVP level of plaintiff's past work, but whether plaintiff's mental capabilities and limitations are compatible with the job's relevant *reasoning level*. Although plaintiff requests that the Court reverse the ALJ's decision and award benefits, remand

506. He failed to do so. Accordingly, upon remand, the ALJ must not only ensure that the opinions of the consultative psychiatrists are properly considered and weighed when assessing the RFC, but must also clarify the RFC with respect to plaintiff's ability to perform simple tasks.

## VI.

## REMAND IS APPROPRIATE

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F. 3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate for the ALJ to evaluate the consultative psychiatrists' opinions regarding plaintiff's reasoning capabilities (i.e., whether she is limited to simple work and to one- and two-part job instructions), and whether she is precluded from performing her past relevant work, or any gainful employment. The ALJ should obtain additional testimony from a vocational expert as described above. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: March 8, 2006

                                            /S/
                                PAUL L. ABRAMS
                  UNITED STATES MAGISTRATE JUDGE

---

is appropriate on account of this apparent misunderstanding.